MASTERSON v. MARSHALL, APPELLANT.

1. **Swamp Lands:** TITLE TO PASSES WITHOUT PATENT, WHEN. Under the act of Congress of September 28th, 1850, (U. S. R. S. §§ 2479-81) when any tract of land has been selected as swamp land, the selection approved by the Secretary of the Interior, and the land accepted by the Governor, the title becomes thereby vested in the State, without any patent from the general government.

2. ————: RELINQUISHMENT OF THE STATE'S TITLE TO: INDEMNITY PROVIDED BY ACT OF CONGRESS OF MARCH 2D, 1855. The Missouri swamp land act of 1868, (Sess. Acts 1868 p. 72 §§ 24 and 25) does not constitute a relinquishment by the State of its title to such swamp lands as may have been sold by the general government since the passage of the said act of Congress; but only an authority to the Governor to relinquish at the request of the county court of any county in which such lands may be; nor does it amount to an unconditional acceptance of the indemnity offered to the State for such relinquishment by the act of Congress of March 2d, 1855, but merely authorizes the Register of Lands to collect such indemnity from the United States in cases where relinquishment has been duly made by the Governor, or swamp lands belonging to the State have been sold by the general government.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS,
Judge.

*Hale & Eads* for appellant.

1.  The title to the land in controversy vested in the
State in fee at least as early as January 24, 1854. *Hann.
& St. Joe. R. R. Co. v. Smith*, 41 Mo. 310 ; S. C. 9 Wall. 95 ;
*Clarkson v. Buchanan*, 53 Mo. 563 ; *Campbell v. Wortman*,
58· Mo. 258.

2.  Plaintiff relies on the Act of Congress of March
2, 1855, entitled " an act for the relief of purchasers and
locators of swamp and overflowed lands," and on the Act
of March 3, 1857, entitled, " an act to confirm to the several
states the swamp and overflowed lands selected under the
act of September 28, 1850, and the act of March 2, 1849."
These acts were not intended to apply to and do not affect
lands which have been ascertained, approved, and set apart
as swamp lands, belonging to the states, and which had
been according to law certified to the Governor as such,
and patents ordered to issue. Congress would, clearly,
have no power to pass such a law ; but we hold that this
was not the intention of either act. It is a matter of his-
tory that there were large quantities of lands selected as
swamp lands and reported to the departments at Washing-
ton, which were suspended, and up to the date of these
acts had not been approved by the Secretary of the Inte-
rior. Many of them had been pre-empted and the pre-
emptors had been allowed to enter them on claim and
proof that they were not swamp lands, and great numbers
of these cases were pending before the department at
Washington. There were also many thousand acres re-
ported to the department as swamp, which had never been
approved or acted on, and the character of the lands re-
mained unsettled and unascertained. We insist that these
acts were intended and could only apply to these cases ;
that is, that lands which had been located and pre-empted

or entered by individuals, and which were *claimed* as swamp lands, should be patented to such individuals, with some provisoes applicable to cases where the counties and states had already sold and conveyed prior to the entry. This is explained by the fact that in many cases the county and State had sold lands, that had been selected by the agents of the State or county, before the lists had been approved by the proper departments at Washington or certified to the Governor of the State. And if on investigation by the proper authorities they should turn out not to ·be swamp land, the Secretary of the Interior still had power to reject or disapprove such selection. To such lands these acts might well apply ; and this· is the only construction that can be given to them consistenly with the rights of the States under the original grants. It is further provided by the same acts that all other lands selected and claimed as swamp land by the several states should be confirmed to the states, and patents required to be issued therefor. These acts construed in this way may be regarded as a settlement of the conflicting claims which had arisen between the Federal Goverment and those claiming under it by entry of such lands and the State authorities. It is the general intention and scope of these acts to settle the controversy in regard to lands *claimed* as swamp land. It was a fair settlement, when accepted and acted upon by the states. A large quantity of lands were. thereby confirmed to the states, which were in an unsettled condition, claimed by the states and counties,. and the title of purchasers from the general govcrnment who had entered portions of them was confirmed and settled. There was no necessity for any act of Congress confirming the title of the states to lands that had been selected and approved, and patents ordered to issue. The original grant required these patents to issue. The act of March 3, 1857, purports to be an act to confirm to the several states the swamp and overflowed lands which had been selected.

No doubt if the State had reconveyed her title to the

general government on the request of the Commissioner of the General Land Office with the consent of the counties, and before they had been sold to individuals, these acts would have operated to confirm the title of the purchasers from the general government.

The plaintiff's patent is a nullity. *Carman v. Johnson,* 20 Mo. 108 ; *Allison v. Hunter,* 9 Mo. 741 ; *Archer v. Bacon,* 12 Mo. 149 ; *Jackson v. Lawton,* 10 John. 22 ; *Jackson v. Hart,* 12 John. 76.

*Ray and Ray* for respondents.

1.  In actions of ejectment the junior patent will prevail over the elder whenever the latter for any reason is void ; or whenever it was forbidden by any law, or was issued contrary to or in violation of law ; or whenever the land was withdrawn from sale, or otherwise appropriated by Congressional grant or confirmation. *Stoddard v. Chamtren,* 2 Howard 284 ; *Bagnell v. Broderick,* 13 Peters 436 ; *Sarpy v. Papin,* 7 Mo. 503 ; *Wright v. Rutgen,* 14 Mo. 585.

2.  Plaintiff's title is expressly protected and confirmed by the acts of Congress of March 2, 1855, and March 3, 1857.    See 10 U. S. Stat. at large 634 ; 11 Ib. 251 ; *R. R. Co. v. Fremont County,* 9 Wall. 89 ; *Thompson v. Prince,* 67 Ills. 283 ; *R. R. Co. v. Smith,* 9 Wall. 95.

3.  The State of Missouri is estopped from calling in question the validity or constitutionality of said acts of Congress by its virtual ratification and confirmation, and by its acceptance of the indemnity provided for said State by said acts of Congress for the loss of said lands.    See Sess. Acts Mo. 1868 p. 72 § 25. It cannot be allowed to ratify in part, or accept the indemnity, for one particular tract and refuse it as to another. *Jarrett v. Morton,* 44 Mo. 275. The validity of these acts, if ratified at all, are ratified as to all the swamp lands thus entered by said purchasers. Even if said acts were invalid, by reason of the title

having passed from the government by the original swamp land grant, yet if the State of Missouri by legislative enactment validated said acts and accepted the indemnity offered by Congress, then the State *thereafter* was estopped from calling in question the validity of such acts, or of issuing patents therefor, and in either event, its patents so issued would be void and pass no title. The patent issued by the State on the 12th of February, 1869, subsequent to such ratification, is illegal, null and void.

4. The donation of these lands by the State to the counties did not make them the absolute property of the counties. The counties only held them in trust for benefit of school fund, and for the purposes of these lands the counties are merely political subdivisions of the State, and held them as such, and the State by its said donations had not parted with its control of same. *State ex rel Robins v. New Madrid County*, 51 Mo. 82.

HOUGH, J.—This was was an action of ejectment for certain lands in Carroll county. The plaintiff claimed title by virtue of a location and settlement made thereon in August, 1856, under the pre-emption laws of the United States, followed by an entry at the United States Land Office in June, 1857, and a patent from the United States based thereon, dated August 5, 1873. The defendant claimed title under a purchase from the county of Carroll in July, 1868, and a deed from the State made in pursuance thereof, dated February 12, 1869. It appears from the record that the lands in question were selected as swamp lands under the act of Congress of September 28, 1850, and that in December, 1853, said selection was approved by the Secretary of the Interior, and in January, 1854, a list of said lands was certified by the Commissioner of the General Land Office to the Governor of Missouri, who, in pursuance of the provisions of the act of Congress aforesaid, requested that a patent might issue for the same, and on the 9th day of March, 1858, a

patent was issued by the United States to the State of Missouri therefor. By the act of Assembly of March 3, 1851, the lands granted to the State by the act of Congress before mentioned, were donated to the counties in which they were situate. The Circuit Court decided that the plaintiff had the better title, and judgment was entered accordingly; to reverse which the defendant has appealed to this court.

I. The first section of the act of September 28, 1850, granted the whole of the swamp and overflowed lands remaining unsold at the passage of the act to the states in which the same are situate. By the second section it was provided that lists and plats of such lands should be made by the Secretary of the Interior and transmitted to the Governor, and, upon his request, patents should issue to the State therefor. On the 2d of March, 1855, Congress passed an act for the relief of purchasers and locators of swamp and overflowed lands, which directed the President of the United States to cause patents to be issued to all purchasers or locators who may have made entries of the public lands claimed as swamp lands prior to the issue of patent to the State as provided in the second section of the act of September 28, 1850. This act further provided for payment to the State of the purchase money received by the United States therefor, upon due proof before the Commissioner of the General Land Office, that any of the lands purchased were swamp lands within the true intent and meaning of the act of 1850. On the 3d of March, 1857, Congress passed another act, continuing in force the foregoing act and extending its provisions to all entries and locations of lands claimed as swamp lands made since its passage, and as selections of swamp and overflowed lands had in many instances been made by the states before the required lists and plats were made by the Secretary of the Interior, the act also declared that all such selections theretofore made and reported to the Commissioner of the

1. SWAMP LANDS: title to passes without patent, when.

General Land Office, so far as the lands selected remained vacant and unappropriated, and not interfered with by actual settlement under some law of the United States, were by said act confirmed. We are not aware of any decision of the Supreme Court of the United States which determines the precise scope and effect of the foregoing acts, and it is unnecessary for us in the present case to undertake to define the limits of their operation. It is conceded by the plaintiff's counsel to be the settled doctrine of the court,—and they do not controvert its correctness or seek to have it reviewed,—that under the swamp land grant of 1850 a patent is not necessary in order to confer title upon the State, that where in any given case the particular tracts constituting a portion of the subject matter of the grant contemplated by the act of 1850 have been authoritatively ascertained, the grant at once takes effect as to the portion so designated, and the title thereto vests in the State without a patent, the issuing of which, as was remarked by Judge Holmes in the case of *Han. & St. Joe R. R. Co. v. Smith*, 41 Mo. 310, " may be considered as the act of a ministerial officer." Lists of such lands selected by State authority when approved by the Secretary of the Interior, and reported to and accepted by the Governor, are clearly sufficient to complete the grant and vest the title. Such lists were made in the present case, and the title to the lands in controversy was therefore vested in the State at the time of the location and settlement made by the plaintiff in 1856, although no patent had then issued to the State, and said lands were no longer subject to sale by the United States authorities; and it was beyond the power of Congress to divest such title by legislative enactment without the consent of the State. The record shows that a relinquishment of the State's title to these lands was twice requested of the Executive of this State by the Secretary of the Interior, but no such relinquishment was ever made.

II. Plaintiff's counsel, however, contend that, if the

acts of 1855 and 1857 were of themselves insufficient to divest the title of the State to the lands in question, sections 24 and 25 of the act of Assembly of 1868, in relation to swamp lands, constitute a legislative acceptance of the provisions of said act, and the indemnity thereby provided, and create an estoppel to any claim on the part of the State to the proprietorship of these lands. Section 24 of the act named, authorizes the Governor to relinquish the title of the State to such swamp and overflowed lands as may have been sold by the General Government since the passage of the act donating said lands to the State, whenever the counties interested in said lands may, by an order of the county court, authorize him so to do. Section 25 constitutes the Register of Lands the agent of the State to settle and adjust all claims the State of Missouri may have against the United States, growing out of the swamp land grant, and also to receive all money, or scrip, from the General Government, due the various counties as indemnity on account of swamp lands sold by the government of the United States since the donation of said lands to the State. We confess ourselves wholly unable to perceive how the foregoing provisions can be fairly construed as constituting a positive relinquishment by the State of its title to the lands in question, or an unconditional acceptance of the indemnity provided by the acts of Congress. On the contrary, the only relinquishment provided for, is one to be made by the Governor at the request of the county courts, and the indemnity which the Register of Lands is authorized to collect from the United States, is such only as would accrue in consequence of relinquishments so made, or such as would accrue in cases where no relinquishment was necessary, that is, in cases where the title had not vested in the State at the date of the acts of Congress aforesaid. It is no answer to this view to say that it was unnecessary, as a matter of law, to have the consent of the counties in order to make a valid relinquish-

2. ——: relinquishment of the State's title to: indemnity provided by act of Congress of March 2d, 1855.

ment to the United States; that although the lands had been donated to the counties, they were still subject to the control and disposal of the law-making power. This may be so, but as the law-making power has limited the power of relinquishment to the cases named, such limitations being reasonable and valid, must be observed. We are of opinion, therefore, that the patent under which the plaintiff claimed title, was issued without authority of law, and was void, and the judgment will therefore be reversed and the cause remanded. The other Judges concur, except Judges NORTON and HENRY, who were not members of the court when this case was argued.

REVERSED.